NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PEISHU ZHENG, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.  03-3093 (JAG) |
| | : | |
| v. | : | OPINION |
| | : | |
| QUEST DIAGNOSTICS INC., | : | |
| | : | |
| Defendant. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before the Court on the motion for summary judgment, pursuant to FED. R. CIV. P. 56, by Defendant Quest Diagnostics Inc. ("Quest").  For the reasons set forth below, the motion will be granted.

## BACKGROUND

The following facts are undisputed.  Plaintiff is a physician who was employed by Quest as a dermatopathologist.  In June of 2002, Quest was notified of a suit filed against it in connection with a diagnosis made by Plaintiff.  Plaintiff was placed on administrative leave, and Quest undertook a review of his work.  The review found a number of errors in diagnoses made by Plaintiff.  In October of 2002, Quest terminated Plaintiff's employment.  Pursuant to the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11133, Quest submitted an adverse action report on Plaintiff to the National Practitioner Data Bank.  In the report, Quest stated: "Plaintiff was terminated as a result of certain quality issues."  Quest selected an action code for the report which corresponded to the category "substandard or inadequate skill level" as

the basis for its action.

On June 27, 2003, Plaintiff filed a Complaint containing five claims relating to the adverse action report and his termination. Plaintiff sought: 1) damages for publication of false and defamatory statements; 2) damages for publicity placing Plaintiff in a false light; 3) an Order directing Quest to submit a revised report on Plaintiff; 4) damages for breach of employment contract; and 5) breach of the employment contract's implied covenant of good faith and fair dealing.

## LEGAL STANDARD

**I.      Summary Judgment**

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury

could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II. Defamation

"[A] statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164-165 (1999) (citing Restatement (Second) of Torts §§ 558, 559).

## III. False light

New Jersey recognizes the tort of publicity in a false light, defined as follows:

> [o]ne . . . gives publicity to a matter concerning another that places the other before the public in a false light [and]
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Romaine v. Kallinger, 109 N.J. 282, 294 (1988) (citing Restatement (Second) of Torts § 652E).

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

#### A. The breach of contract claims

In his opposition brief, Plaintiff characterizes the case as a suit for defamation and wrongful termination, and states that he does not contest the motion for summary judgment as to the wrongful termination claims. (Pl.'s Opp. Br. 1.) The Complaint, however, does not refer to claims for wrongful termination; the claims for termination of employment are made as claims for breach of contract. Because Plaintiff has not opposed the motion for summary judgment as to

4

claims four and five for breach of contract, this Court understands Plaintiff to have conceded that summary judgment should be granted in Defendant's favor on those claims. Summary judgment is granted in favor of Defendant on claims four and five.

      B.     <u>The defamation and false light claims</u>

Defendant moves for summary judgment on claims one, two, and three on a variety of grounds, the simplest and most fundamental of which contends that Plaintiff cannot prove that the statements were false. Under New Jersey law, the falsity of the alleged statement is an essential element of both a defamation and a false light claim.

In response, Plaintiff states: "The scant adverse evidence was insufficient to warrant the statement that Dr. Zheng had a 'substandard or inadequate skill level,' particularly given the high level of variability of opinion in this field." (Pl.'s Opp. Br. 13.) This summarizes Plaintiff's argument as to the falsity of the statements at issue. Plaintiff does not dispute any of the facts about the diagnostic errors he is accused of. Plaintiff does not allege that the statements are based on no evidence, but only that they are not based on sufficient evidence.

This is problematic from the start. An assessment of the adequacy of a person's skill level is necessarily a subjective opinion. Under New Jersey law, "[o]pinion statements . . . are generally not capable of proof of truth or falsity because they reflect a person's state of mind" and are generally not defamatory. <u>Ward v. Zelikovsky</u>, 136 N.J. 516, 531 (1994). The New Jersey Supreme Court has adopted the view of the Supreme Court of the United States: "Harm from a defamatory opinion statement is redressable when the statement implies underlying objective facts that are false. Only if a reasonable factfinder would conclude that the statements imply reasonably specific assertions of fact will the harm be redressable." <u>Id.</u> at 531 (citing

Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990)).  Thus, there is reason to question whether Quest's statement about Plaintiff's skill level is a statement of opinion exempt from the law of defamation.  The Court need not resolve this issue, however, because, even if this statement is capable of defamatory meaning, Plaintiff has presented no evidence of its falsity.

      Plaintiff contends that Quest's appraisal of his skill is false because Quest's own internal review discovered that his error rate was .35%, which, he argues, is lower than an average error rate of 1.76% for Quest pathologists.  Plaintiff's assertion that Quest pathologists have an average error rate of almost 2% – thus, they misdiagnose one patient in fifty – is astonishing and lacks adequate evidentiary support.  In support, Plaintiff points to a piece of paper with a matrix of numbers on it.  (Haines Cert. Ex. B 590.)  This piece of paper is not identified or authenticated in any way.  Without more, it would not be admissible as evidence, and it does not constitute actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248.  Even if this Court found it to be admissible, it is merely a cryptic matrix of numbers and does not clearly support Plaintiff's allegation.

      The only other evidence Plaintiff offers to show the falsity of Quest's statements are letters from three physicians.  (Haines Cert. Ex. A, F, G.)  None of the letters is evidence of the falsity of Quest's statements.  The letters of Drs. Farmer, Hartman, and Wick are critical of Quest and sympathetic to Plaintiff, but they do not show either that Plaintiff did not make any errors nor that his skill level was not inadequate.  (Id.)  The letter of Dr. Wick is notable because, although offered by Plaintiff, it is damaging evidence about his professional ability level.  Dr. Wick, Professor of Pathology at the University of Virginia School of Medicine, reviewed 77 of Plaintiff's cases at Quest.  (Id. Ex. G.)  Dr. Wick reported that he arrived at a clinically

significant difference of opinion for 30 out of the 77 cases. (Id.) This is evidence of an error rate of 39%. Significantly, Wick does not state that this is evidence of the adequacy of Plaintiff's skill level. Presented with the evidence of record – especially a report of a review of Plaintiff's work in which an expert disagreed with 39% of Plaintiff's diagnoses – no reasonable jury could conclude that Quest made false statements about Plaintiff.

At trial, Plaintiff bears the burden of proof that Defendant made false statements about him. At the summary judgment stage, Defendant only has the burden of pointing out the absence of evidence to support Plaintiff's case. Defendant has met this burden, also offering the Luff Affidavit as evidence that the statements were true. Ronald Luff is Director of Anatomic Pathology at Quest's office in Teterboro, New Jersey. (Luff. Aff. ¶ 1.) Luff describes a review of 20,000 of Plaintiff's diagnoses, conducted by outside expert dermatopathologists, and states: "The outside expert dermatopathologists found that plaintiff had misdiagnosed numerous pigmented lesion specimens. Included among these were cases in which Plaintiff failed to diagnose melanoma." (Luff. Aff. ¶ 10.)

To defeat the motion for summary judgment, Plaintiff must present actual evidence that creates a genuine issue as to a material fact for trial. Plaintiff has offered no evidence that the statements were false. Rather, Plaintiff admits that there is evidence adverse to him. (Pl.'s Opp. Br. 13.) Moreover, as already discussed, Plaintiff's evidence supports the conclusion that the statements were true. Plaintiff's contention that the adverse evidence does not adequately substantiate the statements Quest made is a mere conclusory allegation. Without any actual evidence to support Plaintiff's claim that the statements were false, this constitutes a complete failure of proof, as identified by the Third Circuit in Katz: when the nonmoving party has failed

"to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz, 972 F.2d at 55. Given this complete failure of proof, Plaintiff has failed to defeat Defendant's motion for summary judgment.

Moreover, the implications of Plaintiff's position are troubling as a matter of public policy. Plaintiff does not dispute that he made serious mistakes in his professional work. Instead, he objects to being publicly identified as having an inadequate skill level. The implication is that physicians who make serious mistakes should not be identified to the public unless and until they make many more mistakes than their peers. This places an unreasonable burden on health care organizations, one that is akin to a judicial responsibility: before reporting a physician who makes mistakes, the organization must study the error rate of similar physicians and determine whether the doctor in question is truly much worse. As a matter of public policy, the public needs to be informed about physicians who make serious mistakes, and in a timely way, as is required by statute. Quest should be commended for having undertaken an independent review of 20,000 of Plaintiff's diagnoses. To require even greater care, and more research, before identifying a problematic physician would unreasonably impede reporting and interfere with the public's need to know about the competence of providers of medical care.

In his opposition brief, Plaintiff makes a number of other arguments related to the HCQIA. Because this Court finds a complete failure of proof on an essential element of Plaintiff's case, Plaintiff cannot defeat the motion for summary judgment, and these other issues

need not be reached.

## CONCLUSION

Defendant has demonstrated that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Defendant's motion for summary judgment is granted in its entirety. Judgment is entered in Defendant's favor on all claims in the Complaint.

  S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: July 11, 2006